## Issuance of Death Certificates

GAFFORD, Deputy Attorney General, June 21, 1950. —We have your request for an opinion as to whether a coroner has the authority to issue and collect a fee for a certificate of death.

You refer to a specific situation in which a coroner has been following the practice of issuing, in certificate form, record data concerning the deaths of certain persons occurring within his county. The form is entitled "Record of Death". It contains data as to the name, residence, marital status, occupation, age, sex, color, date of death, place of death, cause of death and place of interment of the decedent. At the end of the form the coroner writes his signature above his printed name, affixes his seal and charges a fee therefor. This certificate, except for being slightly less detailed in content, is substantially the same as a death certificate issued by the State Department of Health through its Bureau of Vital Statistics.

You specifically inquire whether our formal opinion no. 295, dated August 17, 1939, addressed to a former Secretary of Health (Issuance of Death Certificates, 35 D. & C. 706), is presently applicable to this situation.

That opinion dealt with the precise question which you now raise. It made a searching inquiry to determine whether authority for the issuance of death cer-

tificates by a coroner existed under the common law of England or this Commonwealth, or whether such authority had been conferred by any existing legislative enactment of this State. It concluded by holding that:

". . . no coroner holding office within this Commonwealth has the authority to issue a death certificate other than to the Department of Health as provided for in section 8 of the Act of June 7, 1915, P. L. 900."

Before enunciating this holding, however, our opinion carefully considered the nature and purpose of the Act of June 7, 1915, P. L. 900, pertaining to the registration of vital statistics, and concluded that the statute was "intended to devise a uniform system for the registration and certification of births and deaths in this Commonwealth and to give the Department of Health, through the Bureau of Vital Statistics, the exclusive right to issue the certificates provided for therein." It pointed out:

1. That under section 21 of the statute, as amended, it was provided that

"*The Department of Health* shall, upon request and the payment of the fee as hereinafter provided, furnish any applicant a certified copy of the record of any birth, death, or marriage registered under (the) provisions of this act . . ."

2. That under section 8 of the act it was provided that

". . . if the circumstances of the case render it probable that the death was caused by unlawful or suspicious means, the (local) registrar shall then refer the case to the coroner for his investigation and certification . . ."

The section further provides that where a coroner has the duty to hold an inquest and to make the certificate of death required for a burial permit, he shall

"furnish such information as may be required by the State Registrar to properly classify the death."

3. That under section 24 of the statute, municipal registration of vital statistics was discontinued and that the only system for such registration was the one established by the act.

After reviewing the foregoing statutory provisions, we made the following observation in our former opinion:

". . . It will be noted that the only power conferred upon any coroner is that of issuing a certificate to the registrar in cases of death by violence, etc., as set forth in section 8. Had the legislature intended that the power to issue such certificates was to be vested in any other person or agency, it would have so provided." [1]

Subsequent to the issuance of our former opinion there was passed the Pennsylvania enactment of the Uniform Vital Statistics Act of May 21, 1943, P. L. 414, and its amendments, 35 PS §505.1 et seq. As we have previously stated, this statute, like the Act of June 7, 1915, P. L. 900, supra, is intended to establish an "all-inclusive system" for the registration, transcription and preservation of data relating to vital statistics,[2] is a general revision of the laws relating thereto, and sets up a general and exclusive system covering this subject.[3]

Section 4 of the present uniform act[4] provides that

---

[1] It is of interest, in this connection, to note that although a copy of a certificate of death issued and certified by the State Registrar was, by virtue of the Act of June 7, 1915, P. L. 900, made admissible in all courts of the Commonwealth as prima facie evidence of the facts therein stated, it was, nevertheless, held that a "coroner's death certificate" was not within the contemplation of the statute and was inadmissible for any purpose: Barsby v. Merck & Co. et al., 14 D. & C. 277 (1930).

[2] 35 PS §505.1.

[3] Vital Statistics Records, 49 D. & C. 432, 434, 435, 436; Microfilms as Evidence, 62 D. & C. 537, 541.

[4] 35 PS §505.4.

the State Department of Health "shall have charge of vital statistics and be the custodian of all vital statistics, files and records".

Section 10 of the uniform act [5] corresponds to section 8 of the Act of June 7, 1915, P. L. 900. It covers two classes of death cases: (a) where the death occurs without medical attendance, or where the physician last in attendance fails to sign the death certificate, then the local registrar is required to refer the case to the coroner, instead of to the local health officer, for immediate investigation and certification of the cause of death prior to issuing a burial permit; and (b) where the death occurs other than from natural causes, it provides:

". . . If the circumstances suggest that the death . . . was caused by other than natural causes, the local registrar shall refer the case to the coroner for investigation and certification."

This provision is almost identical in wording and is identical in meaning with the above-quoted provision from section 8 of the Act of June 7, 1915, P. L. 900.

Section 14 of the uniform act,[6] and section 15 thereof pertaining to fees,[7] correspond to section 21 of the Act of June 7, 1915, P. L. 900, above quoted. Subject to certain provisions relating to delayed or altered certificates and the disclosure of certain record data, section 14 provides, in pertinent part, as follows:

". . . the department (of Health) shall, upon request, furnish to any applicant a certified copy of any certificate or any part thereof . . ."

The similarity in nature, purpose and content of the above-mentioned provisions of the two statutes, makes it manifest that the legislature, by enacting the Uniform Vital Statistics Act, wrought no different result, with respect to whom coroners are authorized

---

[5] 35 PS §505.10.
[6] 35 PS §505.14.
[7] 35 PS §505.15.

to issue death certificates, than that provided in the earlier enactment of the Act of June 7, 1915, P. L. 900, and its amendments, as interpreted in our former opinion.

Accordingly, it is our opinion, and you are hereby advised, that no coroner holding office within this Commonwealth has the authority to issue a death certificate in any form other than to the Department of Health through its local registrar or other duly authorized agent in accordance with section 10 of the Uniform Vital Statistics Act of May 21, 1943, P. L. 414, 35 PS §505.10.